NACCO MATERIALS HANDLING GROUP, INC., Independent Lift Truck Builders Union, International Association of Machinists and Aerospace Workers, International Union, Allied Industrial Workers of America (AFL–CIO) & United Shop and Service Employees, Plaintiffs,

v.

UNITED STATES, Defendant,

and

Toyota Motor Sales, U.S.A., Inc., Defendant–Intervenor.

Slip Op. 97–99.
Court No. 94–02–00096.

United States Court of International Trade.

July 15, 1997.

---

Collier, Shannon, Rill & Scott (Paul C. Rosenthal, Mary T. Staley, David C. Smith, Jr., and Craig L. Silliman), Washington, D.C., for plaintiffs.

Frank W. Hunger, Assistant Attorney General of the United States; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Velta A. Melnbrencis); Terrence J. McCartin, Office of Chief Counsel for Import Administration, United States Department of Commerce, of Counsel, for defendant.

Dorsey & Whitney (John B. Rehm, Munford Page Hall, II, and L. Daniel Mullaney), Washington, D.C., for defendant–intervenor.

## OPINION

CARMAN, Chief Judge.

This matter is before the Court following remand to the United States Department of Commerce ("Commerce"). *See NACCO Materials Handling Group, Inc. v. United States,* 932 F.Supp. 304 (CIT 1996) (*"NACCO II"*). In compliance with this Court's order, Commerce filed its remand results on October 9, 1996. *See Final Results of Redetermination Pursuant to Court Remand: NACCO Materials Handling Group, Inc. v. United States, SLIP OP. 96–99 (June 18, 1996)* (date stamped Oct. 9, 1996) (*"Redetermination"*).

In their comments on the *Redetermination,* plaintiffs continue to dispute Commerce's offsetting Toyota Motor Credit Corporation's ("TMCC") credit expenses with credit revenues it received from unrelated dealers in calculating the U.S. price ("USP") of the subject merchandise. In advancing this challenge, plaintiffs raise two arguments.

First, plaintiffs argue Commerce improperly merged transactions relating to the sale and financing of the subject merchandise, and contend Commerce should have determined the sale and financing constitute two independent legal transactions. Second, plaintiffs argue the statute does not authorize Commerce to offset TMCC's credit expenses with credit revenues TMCC received from unrelated dealers in calculating the subject merchandise's USP. Defendant and defendant-intervenor contend the *Redetermination* is supported by substantial evidence on the record and is otherwise in accordance with law, and therefore should be sustained by this Court.

Based on the reasoning which follows, this Court finds the *Redetermination* is supported by substantial evidence on the record and is otherwise in accordance with law. Accordingly, plaintiffs' challenges are rejected and the *Redetermination* is sustained.

### BACKGROUND

This matter involves a challenge to the final results of Commerce's administrative review, covering the period between June 1, 1989 and May 31, 1990, of an antidumping order on certain internal-combustion, industrial forklift trucks from Japan. *See Certain Internal–Combustion Industrial Forklift Trucks From Japan; Final Results of Antidumping Duty Administrative Review,* 59 Fed.Reg. 1,374 (Dep't. Comm.1994) (final results). The focus of the dispute in this matter is Commerce's treatment of credit revenues received by TMCC from its financing of forklift truck sales. TMCC provided financing to, and received credit revenues from, unrelated forklift truck dealers and unrelated end-users which purchased forklift trucks. In making adjustments to the subject merchandise's USP pursuant to 19 U.S.C. § 1677a(e)(2) (1988), Commerce offset TMCC's credit expenses with credit revenues received from unrelated dealers but not credit revenues received from unrelated end-users. Commerce explained that because it based USP on the price Toyota Motor Sales, U.S.A., Inc. ("TMS") charged to unrelated dealers, it considered "revenue generated as a result of the sale by the dealer to the end-user through a financing arrangement a sep-

arate transaction, and as such, not directly associated with the sale under review." *Id.* at 1,379.

The Court has remanded this matter to Commerce on two previous occasions. Most recently the Court remanded this matter to Commerce to

(1) explain whether Commerce has a general practice of consolidating parent companies and subsidiaries in antidumping determinations ...; (2) explain whether Commerce has been using consolidation only in the calculation of cost of production or constructed value ...; (3) explain what the "requirements for control" are and how they are met, if they are met, in the present case; (4) explain whether ... Commerce is required to differentiate long-term loans from other loans for the purpose of excluding interest income on TMCC's long-term loans; (5) point out what evidence on the record supports a finding of control, and any evidence supporting consolidation, in the present case ...; and (6) if necessary in light of any of Commerce's findings on remand, readdress plaintiffs' argument that the sale and financing of the forklift trucks were separate transactions.

*NACCO II,* 932 F.Supp. at 314.

In responding to the questions posed in this Court's remand order, the *Redetermination* advances three principal contentions. First, the *Redetermination* takes the position that Commerce's treatment of Toyota Motor Corporation of Japan ("TMC"), TMS and TMCC as a single entity in calculating the subject merchandise's USP is supported by substantial evidence on the record and otherwise in accordance with law. In explaining the rationale for treating TMC, TMS and TMCC as a single entity, the *Redetermination* notes

[t]he antidumping statute, the Department's regulations, and the Department's practice create what could be termed a general practice of treating related parties as a single entity where there exists a possibility for manipulation of the prices and costs used in the dumping analysis or where such treatment is otherwise necessary in order to calculate accurately such

price and costs. The underlying rationale for this practice is the recognition that sales prices between related parties may not reflect arm's-length transactions or related parties may otherwise shift costs, thereby affecting the accuracy of our calculations of USP and foreign market value (FMV).

*Redetermination* at 4 (footnotes omitted).

Second, the *Redetermination* asserts because TMC, TMS and TMCC all are appropriately considered to be a single entity, the sale and financing of the forklift trucks are viewed properly as a single transaction. The *Redetermination* asserts

> it does not matter whether the financing provided by TMCC is viewed as part of the forklift sales transaction made by TMS or as a separate transaction. When TMS makes a sale to an unrelated dealer (the first unrelated customer) and TMCC finances that same sale to the unrelated dealer, the credit expense is incurred and the credit revenue is earned by the seller, which is Toyota as a single entity.

*Id.* at 20.

Finally, the *Redetermination* discusses the statutory authority for Commerce's adjustments to the subject merchandise's USP. The *Redetermination* notes pursuant to 19 U.S.C. § 1677a(e)(2) Commerce

> seek[s] to capture both the expense incurred and revenue earned on the sale at issue. . . . We also adjust the [exporter's sales price] for any revenue gained for providing sales services that give rise to the selling expenses. We factor into our analysis all expenses and revenues relating to the sale at issue, regardless of the length of time involved, in order to arrive at a net USP that reflects the costs incurred by the respondent on its U.S. selling activities and captures the full price paid by the customer, as dictated by the law and by our regulations.

*Id.* at 17 (footnote omitted).

### CONTENTIONS OF THE PARTIES

#### A. *Plaintiffs*

Plaintiffs' comments on the *Redetermination* continue to challenge Commerce's decision to offset credit expenses incurred by TMCC with credit revenues received from unrelated dealers in calculating the subject merchandise's USP. Plaintiffs contend Commerce's decision to offset TMCC's credit expenses with the credit revenues it received, which increased the subject merchandise's USP, is not supported by substantial evidence on the record and is not in accordance with law.

Specifically, plaintiffs assert Commerce committed two errors in its *Redetermination*. First, plaintiffs contend Commerce erred by "combin[ing] two separate legal transactions into one; it has combined the selling function performed by Toyota Motor Sales, Inc. ('TMS') (related to the sale of a truck) with the lending function performed by TMCC (related to the loan of money)." (Pls.' Resp. to the Commerce Dep't's Final Results of Redeterm. ("Pls.' Comm.") at 2–3.) Plaintiffs allege that as a result of this error

> the Department is not comparing the actual selling price of the product in the United States to the actual selling price of the product in the home market. Rather, Commerce is comparing the cost incurred by a purchaser to borrow money *combined with* the selling price of a forklift truck in the U.S. to the selling price of a forklift truck in the home market.

(*Id.* at 2.)

Plaintiffs' second challenge asserts Commerce's offsetting TMCC's credit expenses with credit revenues received from unrelated dealers is not permitted by the statute. According to plaintiffs "nothing in the statute authorizes the Department to add the revenue from these transactions to the original selling price of the forklift truck for purposes of calculating the dumping margin." (*Id.* at 6.) As a result of these alleged errors, plaintiffs request this Court once again remand this matter to Commerce "with instructions to the Department to eliminate interest income earned by TMCC from the dumping calculations." (*Id.* at 8.)

#### B. *Defendant*

Defendant responds to plaintiffs' argument that Commerce failed to compare the price of

the product sold in the United States with the price of the product sold in the home market by asserting plaintiffs' argument is "based upon a wrong premise." (Def.'s Comments to Pls.' Resp. to Comm. Dep't's Final Results of Redeterm. ("Def's Comm.") at 3.) According to the defendant, "Commerce did not consider the cost incurred by the purchaser when borrowing the price from TMCC. Rather, Commerce considered the cost incurred, and offset by the revenue earned, by TMCC—part of the Toyota entity—in lending the purchase price to the purchaser." (*Id.* at 3.) Defendant also contends plaintiffs are incorrect in asserting the antidumping statute requires Commerce to compare actual selling prices. According to the defendant, "the law requires Commerce to compare an adjusted USP with FMV. When USP is based upon [the exporter's sales price], Commerce must reduce the starting price by the selling expenses generally incurred by or for the account of the exporter." (*Id.* at 4 (citing 19 U.S.C. § 1677a(e)(2) (1988); 19 C.F.R. § 353.41(3)(2)).)

Additionally, defendant responds to plaintiffs' argument that Commerce should have treated the sale and financing of forklift trucks as separate transactions. According to the defendant, "it does not matter whether the selling function performed by TMS is viewed as part of, or as legally separate from, the financing function performed by TMCC" because Commerce adjusted the exporter's sales price ("ESP") to account for credit expenses incurred and credit revenue earned "by the Toyota entity, of which TMCC is a part." (*Id.* at 4 (footnote omitted).)

Finally, defendant responds to plaintiffs' argument Commerce should have required Toyota to demonstrate that TMCC's financing of the forklift sale was considered part of the bargain by noting "Commerce properly rejected this ... argument because it called for a test which was contrary to 19 U.S.C. § 1677a(e)(2) and wholly unworkable." (*Id.* at 5.) Defendant asserts that rather than applying plaintiffs' proposed "price effect" test, "Commerce confirmed ... TMCC's credit expenses were selling expenses that were directly related to forklift truck sales

and properly adjusted ESP consistent with 19 U.S.C. § 1677a(e)(2)." (*Id.* at 5–6.) Defendant also rejects plaintiffs' argument contending Toyota should be required to prove the forklift truck sale was dependent upon a loan from TMCC as contrary to the requirement of 19 U.S.C. § 1677a(e)(2) which "require[s] Commerce, in calculating ESP, to deduct all expenses generally incurred by or for the account of the 'exporter' in the United States in selling the forklift trucks." (*Id.* at 6.) According to defendant, "NACCO's test would permit a deduction of only those selling expenses that are a precondition to the consummation of any sale or of a sale at a particular price. The statute, however, places no such limitation upon the allowable selling expenses." (*Id.* at 7.)

### C. *Defendant-Intervenor*

The comments filed by defendant-intervenor urge this Court to affirm Commerce's *Redetermination* and to order Commerce to direct the liquidation of the entries covered by the administrative review at issue. While defendant-intervenor previously contested Commerce's treatment of the Operator Restraint Safety ("ORS") seat expenses, defendant-intervenor's comments on the *Redetermination* note "[t]his case has been extensively briefed and argued by the parties over the past two-and-a-half years, and, in that time, the Department has reconsidered and elaborated on its final decision in the administrative review under consideration in the course of two separate remands. It is now time for closure." (Def.-Interv.'s Comments on Def.'s Final Results of Redeterm. ("Def.-Interv.'s Comm.") at 1–2.)

### STANDARD OF REVIEW

In reviewing a remand determination by the United States Department of Commerce, this Court must sustain the remand determination unless it is determined to be "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 459,

95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)).

## DISCUSSION

### 1. Commerce's Treatment of TMC, TMS and TMCC as a Single Entity in Calculating the USP of the Subject Merchandise

The first issue addressed in the *Redetermination* is Commerce's practice of treating related parties as a single entity in calculating the USP of subject merchandise in antidumping duty investigations. The *Redetermination* notes the statute requires Commerce to treat the exporter and the U.S. importer as a single entity where "the exporter directly or indirectly owns an interest in the U.S. importer." *Redetermination* at 6 (footnote omitted) (*citing* 19 U.S.C. § 1677(13)(c) (1988)) (providing the statutory term "exporter" includes individuals who import or for whose account goods are imported into the United States if "the exporter, manufacturer, or producer owns or controls, directly or indirectly, ... any interest in any business conducted by such person"). Commerce asserts its treatment of related parties as a single entity is necessary to prevent "respondents [from] avoid[ing] our inclusion of certain U.S. expenses in the dumping analysis by shifting selling expenses from the U.S. importer to related companies." *Id.* at 7.

In applying the statute, Commerce determined TMC, TMS and TMCC all fall within the definition of "exporter" in 19 U.S.C. § 1677(13) (1988), and thus are appropriately treated as a single entity in calculating the subject merchandise's USP. Commerce concluded TMC was appropriately included in the statutory definition of the "exporter" because "it is the company that exported the subject merchandise to the United States." *Id.* at 8. Additionally, Commerce determined TMS and TMCC also fell within the statutory definition of "exporter" because "TMS is the U.S. importer of record" and TMCC is "its wholly owned subsidiary." *Id.* The *Redetermination* also emphasizes both TMS and TMCC satisfy the ownership requirements of 19 U.S.C. § 1677(13)(c) (1988), and thus are properly treated as part of a single

entity, because "TMC directly owns 100 percent of TMS and indirectly owns, through TMS, 100 percent of TMCC." *Id.*

■ The Court notes plaintiffs' comments do not challenge Commerce's determination to treat TMC, TMS and TMCC as a single entity. In addition to the inter-related ownership structure discussed in the *Redetermination,* the Court finds Toyota's questionnaire responses provide additional evidence supporting Commerce's treatment of TMC, TMS and TMCC as a single entity. Specifically, Toyota's questionnaire responses indicate similarities in the management structure and composition of the boards of directors as well as common stock ownership among TMC, TMS and TMCC. Accordingly, the Court finds Commerce's treatment of TMC, TMS and TMCC as a single entity constituting the "exporter" of the subject merchandise, pursuant to 19 U.S.C. § 1677(13)(c) (1988), is supported by substantial evidence on the record and is otherwise in accordance with law.

■ The Court's finding that Commerce's treatment of TMC, TMS and TMCC as a single entity is supported by substantial evidence on the record and otherwise in accordance with law neutralizes the strength of plaintiffs' argument that Commerce improperly merged transactions involving the sale and financing of the subject merchandise. Plaintiffs argument that Commerce, by including credit revenues received by TMCC in calculating the subject merchandise's USP, is "comparing the cost incurred by a purchaser to borrow money combined with the selling price of a forklift truck in the U.S. to the selling price of a forklift truck in the home market" (Pls.' Comm. at 2) relies upon an artificial distinction. TMC, TMS and TMCC constitute a single entity which received both the selling price of the subject merchandise as well as credit revenue resulting from the provision of financing to unrelated dealers. Rather than constituting two separate arm's length transactions, the sale and financing of the subject merchandise are viewed properly as two transactions carried out by different branches of the same entity. Indeed, plaintiffs' comments on the *Redetermination* ac-

knowledge the sale and financing transactions "each . . . earn[s] revenue for the larger corporate entity Toyota." (*Id.* at 3.) Accordingly, plaintiffs' arguments the sale and financing transactions are separate legal transactions and that only the transactions involving the sale of the subject merchandise are relevant to the calculation of the USP are rejected.

2. *Commerce's Inclusion of Credit Revenues Earned by, TMCC in Calculating USP*

Before addressing the merits of plaintiffs' second argument, the Court would like to clarify plaintiffs' characterization of Commerce's calculation of the subject merchandise's USP. Plaintiffs assert "the Department [im]properly allowed Toyota Motor Corporation ('Toyota') to increase its U.S. price to account for credit revenue earned by a related financial institution." (Pls.' Comm. at 1.) The Court observes, however, the statute specifically provides

> For purposes of this section, the exporter's sales price shall also be adjusted *by being reduced* by the amount, if any, of—
>
> . . .
>
> (2) expenses generally incurred by or for the account of the exporter in the United States in selling identical or substantially identical merchandise.

19 U.S.C. § 1677a(e) (1988) (emphasis added). Because the statute only enumerates circumstances which permit the reduction of the exporter's sales price ("ESP"), plaintiffs' assertion that Commerce's inclusion of credit revenues received by TMCC resulted in "the Department . . . increas[ing][the] U.S. price" (Pls.' Comm. at 7) could be interpreted incorrectly. The Court believes a more accurate characterization would be Commerce's offsetting TMCC's credit expenses with its credit revenues resulted in a smaller reduction in the USP of the subject merchandise than if Commerce did not include the credit revenues. Commerce's methodology did not, as plaintiffs' comments might be read to suggest, result in an overall increase in the USP of the subject merchandise.

Plaintiffs second argument challenging the *Redetermination* asserts Commerce violated the statute by improperly offsetting credit expenses incurred by TMCC with credit revenues received from unrelated dealers. The *Redetermination* cites Section 772(e) of the Tariff Act of 1930 in support of Commerce's practice of offsetting credit expenses with credit revenues. The statute provides that when ESP is used as the measure of the USP, the ESP may be reduced to account for "expenses generally incurred by or for the account of the exporter in the United States in selling identical or substantially identical merchandise." 19 U.S.C. § 1677a(e)(2) (1988). According to the *Redetermination,* Commerce acted in compliance with the statute's requirements by "adjust[ing] USP to include the selling expenses incurred and revenue gained by TMCC in providing financing to the unrelated U.S. purchaser of forklift trucks from TMS." *Redetermination* at 10.

The question left for the Court is whether 19 U.S.C. § 1677a(e)(2) permits Commerce to offset credit expenses with credit revenues in making adjustments to the ESP. The statutory language at issue originated in the Antidumping Act of 1921. *See* Antidumping Act of 1921, Pub.L. No. 67–10, § 204(3), 42 Stat. 9, 13 (1921) (providing the exporter's sales price shall be reduced by "an amount equal to the expenses, if any, generally incurred by or for the account of the exporter in the United States in selling identical or substantially identical merchandise"). This language was later modified slightly with the passage of the Trade Agreements Act of 1979. *See* Trade Agreements Act of 1979, Pub.L. No. 96–39, § 101, 93 Stat. 144, 181–82 (1979) (codified at 19 U.S.C. § 1677a(e)(2) (1988)).

■ This Court applies the two step analytical framework established by the United States Supreme Court in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) in reviewing Commerce's interpretation of the statutory language. First, this Court must determine whether Congress clearly expressed its intent with respect to whether the administering authority may offset credit expenses with credit revenues in making adjustments to the exporter's sales

price. *See Chevron,* 467 U.S. at 842, 104 S.Ct. at 2781. If Congressional intent is clear, this Court must give it effect. *See id.* at 842–43, 104 S.Ct. at 2781. However, if Congressional intent with respect to permissible adjustments to the exporter's sales price is unclear, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782 (footnote omitted).

In reviewing the statutory language and legislative history of § 204(3) of the Antidumping Act of 1921, as well as § 101 of the Trade Agreements Act of 1979, the Court is unable to find any expression of Congressional intent as to whether Commerce, in making adjustments to the subject merchandise's ESP, may offset credit expenses with credit revenues generated in the course of extending financing to customers. Therefore, this Court must determine whether Commerce's practice of offsetting credit expenses with credit revenues in calculating ESP is a reasonable construction of the statute. In reaching its determination, the Court "may not substitute its own construction of a statutory, provision for a reasonable interpretation made by the administrator of an agency." *Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782 (footnote omitted).

The parties' opposing positions reflect, in effect, two different interpretations of the phrase "expenses generally incurred" in 19 U.S.C. § 1677a(e)(2). In arguing the statute does not permit Commerce to offset credit expenses with credit revenues, plaintiffs are in effect arguing the phrase "expenses generally incurred" only encompasses expenses incurred by the respondent, irrespective of any offsetting revenue. Therefore, plaintiffs would appear to be arguing for an interpretation which permits Commerce to increase ESP to account for any expenses incurred by the respondent or its related parties, but would not permit Commerce to offset any of those expenses with corresponding revenues.

In contrast, defendant asserts, in effect, the phrase "expenses generally incurred" should be interpreted to include expenses net of any revenues received, or in other words expenses offset by corresponding revenues. In the *Redetermination,* Commerce asserts,

"we routinely include both revenues and expenses in our analysis in order to capture fully all adjustments that we must make in order to prevent the manipulation of the dumping law and to calculate the dumping margin as accurately as possible." *Redetermination* at 25.

■ The Court holds Commerce's construction of the statute to permit the offset of credit expenses with credit revenues is a reasonable construction of the statute, and finds Commerce's construction of the statute will, as the *Redetermination* asserts, promote a more accurate measurement of the dumping margin. Accordingly, the Court rejects plaintiffs' challenge and holds Commerce's adjusting the ESP of the subject merchandise to account for TMCC's credit expenses, net of its credit revenues, is supported by substantial evidence on the record and is otherwise in accordance with law.

### 3. Commerce's Treatment of ORS as a Warranty Expense

The Court notes defendant-intervenor submitted comments on the draft *Redetermination* to Commerce challenging the treatment of expenses incurred by Toyota in retrofitting certain forklift trucks with Operator Restraint Safety ("ORS") seats as a warranty expense during the period of review ("POR"). In its comments on the *Redetermination* submitted to this Court, however, defendant-intervenor does not raise a similar objection. Indeed, defendant-intervenor's comments urge this Court to sustain the *Redetermination,* noting "[t]his case has been extensively briefed and argued by the parties over the past two-and-a-half years, and, in that time, the Department has reconsidered and elaborated on its final decision in the administrative review under consideration in the course of two separate remands. It is now time for closure." (Def.-Interv.'s Comm at 1–2.) The Court, noting no party has challenged Commerce's treatment of the ORS seat retrofit expenses as a warranty expense incurred by Toyota during the POR, finds the *Redetermination*'s treatment of ORS seat expenses is supported by substantial evidence on the record and otherwise in accordance with law.

CONCLUSION

This Court, having found Commerce's *Redetermination* to be supported by substantial evidence on the record and otherwise in accordance with law, rejects plaintiffs' challenges to and sustains the *Redetermination.*

JUDGMENT ORDER

This case having been submitted for decision, and this Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

ORDERED that plaintiffs' challenge to the Department of Commerce's *Final Results of Redetermination Pursuant to Court Remand: NACCO Materials Handling Group, Inc. v. United States, SLIP OP. 96–99 (June 18, 1996)* (date stamped Oct. 9, 1996) ("*Redetermination*") is rejected; and it is further

ORDERED that Commerce's *Redetermination* is sustained.